1

2

3

4

5

6

7

8                    IN THE UNITED STATES DISTRICT COURT

9                  FOR THE EASTERN DISTRICT OF CALIFORNIA

10   DAVID W. WILSON,

11              Plaintiff,              No. CIV S-06-1232 MCE GGH P

12        vs.

13   ARNOLD SCHWARZENEGGER, et al.,

14              Defendants.            <u>ORDER</u>

15   _____/

16        Plaintiff, a state prisoner proceeding pro se and in forma pauperis, seeks relief

17   pursuant to 42 U.S.C. § 1983.  By <u>Order</u>, filed on November 1, 2006, plaintiff's complaint was

18   dismissed with leave granted for plaintiff to file an amended complaint.  Plaintiff has filed an

19   amended complaint.

20        As plaintiff was previously informed, the court is required to screen complaints

21   brought by prisoners seeking relief against a governmental entity or officer or employee of a

22   governmental entity.  28 U.S.C. § 1915A(a).  The court must dismiss a complaint or portion

23   thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state

24   a claim upon which relief may be granted, or that seek monetary relief from a defendant who is

25   immune from such relief.  28 U.S.C. § 1915A(b)(1),(2).

26   \\\\\

1

A claim is legally frivolous when it lacks an arguable basis either in law or in fact. Neitzke v. Williams, 490 U.S. 319, 325 (1989); Franklin v. Murphy, 745 F.2d 1221, 1227-28 (9th Cir. 1984). The court may, therefore, dismiss a claim as frivolous where it is based on an indisputably meritless legal theory or where the factual contentions are clearly baseless. Neitzke, 490 U.S. at 327. The critical inquiry is whether a constitutional claim, however inartfully pleaded, has an arguable legal and factual basis. See Jackson v. Arizona, 885 F.2d 639, 640 (9th Cir. 1989); Franklin, 745 F.2d at 1227.

A complaint, or portion thereof, should only be dismissed for failure to state a claim upon which relief may be granted if it appears beyond doubt that plaintiff can prove no set of facts in support of the claim or claims that would entitle him to relief. See Hishon v. King & Spalding, 467 U.S. 69, 73 (1984), citing Conley v. Gibson, 355 U.S. 41, 45-46 (1957); see also Palmer v. Roosevelt Lake Log Owners Ass'n, 651 F.2d 1289, 1294 (9th Cir. 1981). In reviewing a complaint under this standard, the court must accept as true the allegations of the complaint in question, Hospital Bldg. Co. v. Rex Hospital Trustees, 425 U.S. 738, 740 (1976), construe the pleading in the light most favorable to the plaintiff, and resolve all doubts in the plaintiff's favor. Jenkins v. McKeithen, 395 U.S. 411, 421 (1969).

The complaint states a colorable claim for relief against defendants Nesbeth, Baker as to plaintiff's claims of retaliation, pursuant to 42 U.S.C. § 1983 and 28 U.S.C. § 1915A(b).

The previously dismissed complaint, which, inter alia, violated Fed. R. Civ. P. 8, consisted of more than 185 pages and was purportedly a class action brought on behalf of Enhanced Outpatient Program (EOP) inmates at California Medical Facility at Vacaville (CMF). In the original complaint, plaintiff named some 30 defendants. Plaintiff was informed that he might proceed in this action only on his own behalf, and he was, in any amended pleading,

\\\\\

\\\\\

2

restricted to 25 pages, including exhibits.[1]  Plaintiff appears to have made some effort to comply with the court's order, although his allegations are not a model of clarity and he still names an excessive number of defendants, some 25 individuals; on the other hand, although he purports to bring his claims in part under the A.D.A., he does not plainly name an entity as to those claims.

Plaintiff claims that he and all other EOP inmates are being denied "half hour and count clear dayroom, washroom, shower program unlocks," "evening count clear cell unlocks for program activities and participation," unlock access not denied to non-EOP inmates.  Amended Complaint (AC, p. 1).  It is extremely difficult to unravel precisely what plaintiff is alleging:

> EOP's are forced to cells during ADL/Housekeeping when most cells are clean.  This is done for Correctional Officer[s] (C/O's) [sic] will not have to work doing their jobs, as well as to deny EOP's evening count clear cell unlocks for program activities and participation, which on Saturdays and Sundays the half hour unlocks are "denied" for no psychological groups are held, and "no" psy. staff present.  Which half (½) hour cell one-ways "are not" given at all 2nd Watch 8:30 a.m. to 2:00 p.m., for claim of [sic] group therapy, which only one side of units are allowed to groups at a time, therefore side not at groups are "denied" showers and washroom access, and also makes EOP inmate's [sic] late to priority medical, or other ducket passes at times 8:45, 9:45, 10:45, 11:45, 12:45, 1:45, for EOP's are held in cells until the on hour cell unlocks.  And during the 3rd Watch Institutional Count Clear unlocks from 4:40 p.m. to 5:00 p.m. EOP's "are not" released for dayroom table games, educational television, leisure time access "showers" program is denied as well as half ½ hour unlocks for access to dinner for law library access, as well as other ducket passes.  These "denials" of program help relieve stress and mental disorders.  Plaintiff having filed group class civil action, and separate appeals of "discrimination" with different "operative nucleus of fact" [sic] for reasonable modifications to hierarchical administrators for intervention, then prison appeals.  Plaintiff is then transferred from cell to cell in reprisal to appeals to another unit where plaintiff Wilson request for [sic] reasonable modifications, then another unit where staff C/O's ignore unlocks half (½) hour and program unlocks, force EOP's to cell under claim ADL/Housekeeping, which plaintiff files appeals and staff complaints to have accessibility as non-EOP's, which after appeals are procedurally barred & undue restraints placed.

AC, pp. 1-2.

---

[1] Plaintiff exceeded the court's proscription by about three pages.

3

1     This extensive excerpt is included to demonstrate plaintiff's allegations, which are

2  not reasonably susceptible to response by defendants.  Nothing which plaintiff has set forth, to

3  the extent discernible, appears to plainly implicate a deprivation of plaintiff's constitutional

4  rights.  When plaintiff does move past his generic allegations and attempts to link his claims to

5  an individual defendant, there is not sufficient improvement:

6           On March 15, 2006, plaintiff went to ICC, where plaintiff
           explained 115 disciplinary was retaliation, and CCII, Bautista co-
7           chaired, and March 23, 2006, comes to plaintiff at unit and ask
           questions, which March 30, 2006, plaintiff received ICC chrono
8           and CCII, Bautista has altered 128-G, to deny due process of
           Fourteenth Amendment, to continue segregation for Eight [sic]
9           Amendment & ADA laws.

10  AC, p. 10, ¶ 35.

11     Plaintiff's allegations, although not as lengthy as in his original complaint, still

12  fundamentally violate Rule 8, because plaintiff fails to set forth "a short and plain statement of

13  the claim showing entitlement to relief...."  Fed. R. Civ. P. 8(a)(2).  As to his claims against

14  defendant Bautista, set forth above, plaintiff simply makes conclusory statements without

15  providing the factual predicate of his claims.  That is, he does not identify the disciplinary action

16  to which he refers or how the 128-G was altered.  This defendant will be dismissed.

17     One of plaintiff's exhibits, a January 18, 2005, second level appeal response

18  addresses issues plaintiff raised regarding whether EOP Units should provide half hour unlocks

19  so that more inmates could have access to showers and program activities and whether EOP units

20  are forcing inmates in such housing to return to their cells during housekeeping.  Plaintiff appears

21  to have prevailed on the prison grievance to the extent that the response acknowledged that unit

22  half hour unlocks were "not being conducted according to the unit log book."  AC, p. 10 &

23  Exhibit PP (17) e-e2.  But even the clearer language of the appeal response does not of itself on

24  the face of it implicate a constitutional right.

25     As plaintiff has been earlier informed, to the extent that he alleges that he has

26  been subjected to disciplinary action as a form of retaliation for the filing of grievances, inmates

4

do have a right to be free from the filing of false disciplinary charges in retaliation for the exercise of constitutionally protected rights. Pratt v. Rowland, 65 F.3d 802, 807 (9th Cir. 1995); Schroeder v. McDonald, 55 F.3d 454, 461 (9th Cir. 1995); Rizzo v. Dawson, 778 F.2d 527, 532 (9th Cir. 1985). The Ninth Circuit treats the right to file a prison grievance as a constitutionally protected First Amendment right. Hines v. Gomez, 108 F.3d 265 (9th Cir. 1997); see also Hines v. Gomez, 853 F. Supp. 329 (N.D. Cal. 1994) (finding that the right to utilize a prison grievance procedure is a constitutionally protected right, cited with approval in Bradley v. Hall, 64 F.3d 1276, 1279 (9th Cir. 1995)); Graham v. Henderson, 89 F.3d 75 (2nd Cir. 1996) (retaliation for pursing a grievance violates the right to petition government for redress of grievances as guaranteed by the First and Fourteenth Amendments); Jones v. Coughlin, 45 F.3d 677, 679-80 (2nd Cir. 1995) (right not to be subjected to false misconduct charges as retaliation for filing prison grievance); Sprouse v. Babcock, 870 F.2d 450, 452 (8th Cir. 1989) (filing disciplinary actionable if done in retaliation for filing inmate grievances); Franco v. Kelly, 854 F.2d 584, 589 (2nd Cir. 1988) ("Intentional obstruction of a prisoner's right to seek redress of grievances is precisely the sort of oppression that section 1983 is intended to remedy" (alterations and citation omitted)); Cale v. Johnson, 861 F.2d 943 (6th Cir. 1988) (false disciplinary filed in retaliation for complaint about food actionable).

However, in order to state a retaliation claim, a plaintiff must plead facts which suggest that retaliation for the exercise of protected conduct was the "substantial" or "motivating" factor behind the defendant's conduct. See Soranno's Gasco, Inc. v. Morgan, 874 F.2d 1310, 1314 (9th Cir. 1989). The plaintiff must also plead facts which suggest an absence of legitimate correctional goals for the conduct he contends was retaliatory. Pratt at 806 (citing Rizzo at 532). Verbal harassment alone is insufficient to state a claim. See Oltarzewski v. Ruggiero, 830 F.2d 136, 139 (9th Cir. 1987). However, even threats of bodily injury are insufficient to state a claim, because a mere naked threat is not the equivalent of doing the act itself. See Gaut v. Sunn, 810 F.2d 923, 925 (9th Cir. 1987). Mere conclusions of hypothetical

retaliation will not suffice, a prisoner must "allege specific facts showing retaliation because of the exercise of the prisoner's constitutional rights." Frazier v. Dubois, 922 F.2d 560, 562 (n. 1) (10th Cir. 1990).

This is not to say that a vexatious grievance filer can never be punished. Vexatious litigants may be the subject of court discipline, and the undersigned would find it incongruous that while the courts can punish vexatious filings, prison officials may not.  Indeed, the right to petition for grievances is not absolutely protected; such a right has no greater protection than speech in general.  Rendish v. City of Tacoma, 123 F.3d 1216 (9th Cir. 1997).  In the prison context, one's free speech rights are more constricted from what they would be on the outside.  O'Lone v. Estate of Shabazz, 482 U.S. 342, 107 S. Ct. 2400 (1987).  Again, plaintiff must show that the actions or omissions constituting the "retaliation" served no legitimate penological goal.  Plaintiff's claim against defendant Hislip involves only an alleged and unspecified threat by defendant Hislip, who will be dismissed.  Plaintiff also makes no colorable allegations against defendant Williams.  Plaintiff will be granted one more opportunity to amend.

Plaintiff alleges that he was denied due process at an I.C.C. hearing because he had asked for reasonable accommodation; however, his own allegations indicated that reports of witnesses on his behalf were read into the record and considered, which on the face of it does not implicate a constitutional due process right.  Plaintiff's claims against defendants Arnold and Mitchell will be dismissed.

With respect to defendants Schwarzenegger, Dovey, Tilton, Hubbard, Twyman, Krestch, plaintiff sets forth no specific allegations linking them to any constitutional deprivation which he has suffered.  The Civil Rights Act under which this action was filed provides as follows:

> Every person who, under color of [state law] . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution . . . shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

6

42 U.S.C. § 1983.  The statute requires that there be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by plaintiff.  See Monell v. Department of Social Servs., 436 U.S. 658 (1978); Rizzo v. Goode, 423 U.S. 362 (1976).  "A person 'subjects' another to the deprivation of a constitutional right, within the meaning of § 1983, if he does an affirmative act, participates in another's affirmative acts or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made."  Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).

Moreover, supervisory personnel are generally not liable under § 1983 for the actions of their employees under a theory of respondeat superior and, therefore, when a named defendant holds a supervisorial position, the causal link between him and the claimed constitutional violation must be specifically alleged.  See Fayle v. Stapley, 607 F.2d 858, 862 (9th Cir. 1979); Mosher v. Saalfeld, 589 F.2d 438, 441 (9th Cir. 1978), cert. denied, 442 U.S. 941 (1979).  Vague and conclusory allegations concerning the involvement of official personnel in civil rights violations are not sufficient.  See Ivey v. Board of Regents, 673 F.2d 266, 268 (9th Cir. 1982).

To the extent that plaintiff seeks injunctive relief, just as it is not necessary to allege Monell[2] policy grounds when suing a state or municipal official in his or her official capacity for injunctive relief related to a procedure of a state entity, Chaloux v. Killeen, 886 F.2d 247 (9th Cir. 1989), it follows that it is not necessary to allege the personal involvement of a state official when plaintiffs are attacking a state procedure on federal grounds that relates in some way to the job duties of the named defendant.  All that is required is that the complaint name an official who could appropriately respond to a court order on injunctive relief should one ever be issued.  Harrington v. Grayson, 764 F. Supp. 464, 475-477 (E.D. Mich. 1991); Malik v. Tanner, 697 F. Supp. 1294, 1304 (S.D.N.Y. 1988).  ("Furthermore, a claim for injunctive relief, as

---

[2]  Monell v. Department of Social Servs., 436 U.S. 658, 98 S. Ct. 2018 (1978).

1    opposed to monetary relief, may be made on a theory of respondeat superior in a § 1983

2    action."); Fox Valley Reproductive Health Care v. Arft, 454 F. Supp. 784, 786 (E.D. Wis. 1978).

3    See also, Hoptowit v. Spellman, 753 F.2d 779 (9th Cir. 1985), permitting an injunctive relief suit

4    to continue against an official's successors despite objection that the successors had not

5    personally engaged in the same practice that had led to the suit.  However, because a suit against

6    an official in his or her official capacity is a suit against the state, policy or procedure of the state

7    must be at issue in a claim for official capacity injunctive relief.  Haber v. Melo, 502 U.S. 21, 25,

8    112 S. Ct. 358, 361-62 (1991).  Any claims plaintiff makes against these officials arises from his

9    complaints under the A.D.A.  See discussion below.  These defendants will be dismissed from

10   this action.  Plaintiff will be granted one further opportunity to amend.

11            To the extent that plaintiff seeks to bring this action pursuant to Title II of the

12   ADA, he must name a state entity as to his claims for injunctive relief and damages.  See Phiffer

13   v. Columbia River Correctional Institute, 384 F.3d 791 (9th Cir. 2004); Lovell v. Chandler, 303

14   F.3d 1039 (9th Cir. 2002).  Plaintiff cannot seek damages pursuant to the ADA against

15   defendants in their individual capacities.  Eason v. Clark County School Dist., 303 F.3d 1137,

16   1144 (9th Cir. 2002), citing Garcia v. S.U.N.Y. Health, 280 F.3d 98, 107 (2d Cir. 2001).

17   Accordingly, plaintiff's claims against the individual defendants under the ADA must be

18   dismissed because plaintiff has not named a proper defendant.

19            The above defect, however, could be overlooked because official capacity

20   defendants represent the entity over which they have cognizance.  Nevertheless, Title II of the

21   ADA prohibits a public entity from discriminating against a qualified individual with a disability

22   on the basis of a disability.  42 U.S.C. § 12132 (1994); Weinrich v. L.A. County Metro Transp.

23   Auth., 114 F.3d 976, 978 (9th Cir. 1997).  To state a claim under Title II, the plaintiff must allege

24   four elements: 1) the plaintiff is an individual with a disability; 2) the plaintiff is otherwise

25   qualified to participate in or receive the benefit of some public entity's services, programs, or

26   activities; 3) the plaintiff was either excluded from participation in or denied the benefits by the

1   public entity; and 4) such exclusion, denial of benefits or discrimination was by reason of the

2   plaintiff's disability.  Weinrich, 114 F.3d at 978

3          Plaintiff improperly claims that a number of individual defendants deny EOP

4   inmates at CMF (without properly naming that entity as a defendant) access to shower and

5   program and educational activities.  AC, pp. 7-12.  In addition to failing to name a proper

6   defendant, plaintiff does not expressly allege the basis upon which he has been classified as an

7   "EOP" inmate.  While his claims with respect to a lack of equal access to training or educational

8   programs and showers may be colorable claims, because plaintiff does not name the appropriate

9   defendant nor has he expressly set forth that he has a qualifying disability under the ADA, his

10  claims against the individual defendants based on the ADA will be dismissed, but plaintiff will

11  be granted one further opportunity to amend his complaint.

12         Plaintiff claims that defendants Cates, Cullen, Cry, Piazza, Providence, O'Ran,

13  and Grannis, with respect to the processing of his grievances, do not state a claim.  Prisoners do

14  not have a "separate constitutional entitlement to a specific prison grievance procedure."

15  Ramirez v. Galaza, 334 F.3d 850, 860 (9th Cir. 2003), citing Mann v. Adams, 855 F.2d 639, 640

16  (9th Cir. 1988).  Even the non-existence of, or the failure of prison officials to properly

17  implement, an administrative appeals process within the prison system does not raise

18  constitutional concerns.  Mann v. Adams, 855 F.2d 639, 640 (9th Cir. 1988).  See also, Buckley

19  v. Barlow, 997 F.2d 494, 495 (8th Cir. 1993); Flick v. Alba, 932 F.2d 728 (8th Cir. 1991).  Azeez

20  v. DeRobertis, 568 F. Supp. 8, 10 (N.D.Ill. 1982) ("[A prison] grievance procedure is a

21  procedural right only, it does not confer any substantive right upon the inmates.  Hence, it does

22  not give rise to a protected liberty interest requiring the procedural protections envisioned by the

23  fourteenth amendment").  Specifically, a failure to process a grievance does not state a

24  constitutional violation.  Buckley, supra.  State regulations give rise to a liberty interest protected

25  by the Due Process Clause of the federal constitution only if those regulations pertain to

26  "freedom from restraint" that "imposes atypical and significant hardship on the inmate in relation

9

1  to the ordinary incidents of prison life." Sandin v. Conner, 515 U.S. 472, 484, 115 S. Ct. 2293,

2  2300 (1995).[3]  Plaintiff's due process claims against these defendants will be dismissed but

3  plaintiff will be granted one further opportunity to amend.

4          With respect to defendants Moore and Worden, both of whom plaintiff alleges are

5  employees of the federal government, plaintiff's claims will be dismissed because they are not,

6  on the face of it, state actors pursuant to § 1983.

7          Plaintiff's claims against defendants Foster, Riley, Morreira and Allen are simply

8  too vaguely framed to be colorable.  These defendants are dismissed.

9          In addition, plaintiff is informed that the court cannot refer to a prior pleading in

10  order to make plaintiff's amended complaint complete.  Local Rule 15-220 requires that an

11  amended complaint be complete in itself without reference to any prior pleading.  This is

12  because, as a general rule, an amended complaint supersedes the original complaint.  See Loux v.

13  Rhay, 375 F.2d 55, 57 (9th Cir. 1967).  Once plaintiff files an amended complaint, the original

14  pleading no longer serves any function in the case.  Therefore, in an amended complaint, as in an

15  original complaint, each claim and the involvement of each defendant must be sufficiently

16  alleged.  Further, if plaintiff chooses to amend the complaint, plaintiff must demonstrate how the

17  conditions complained of have resulted in a deprivation of plaintiff's constitutional rights.  See

18  Ellis v. Cassidy, 625 F.2d 227 (9th Cir. 1980).  Also, the complaint must allege in specific terms

19  how each named defendant is involved.  There can be no liability under 42 U.S.C. § 1983 unless

20  there is some affirmative link or connection between a defendant's actions and the claimed

21

22          [3]  "[W]e recognize that States may under certain circumstances create liberty interests
which are protected by the Due Process Clause.  See also Board of Pardons v. Allen, 482 U.S.
23  369, 107 S.Ct. 2415, 96 L.Ed.2d 303 (1987).  But these interests will be generally limited to
freedom from restraint which, while not exceeding the sentence in such an unexpected manner as
24  to give rise to protection by the Due Process Clause of its own force, see, e.g., Vitek v. Jones,
445 U.S. 480, 493, 100 S.Ct.1254, 1263-1264 (transfer to mental hospital), and Washington, 494
25  U.S. 210, 221- 222, 110 S.Ct. 1028, 1036-1037 (involuntary administration of psychotropic
drugs), nonetheless imposes atypical and significant hardship on the inmate in relation to the
26  ordinary incidents of prison life." Sandin v. Conner, supra.

1   deprivation.  Rizzo v. Goode, 423 U.S. 362 (1976); May v. Enomoto, 633 F.2d 164, 167 (9th Cir.

2   1980); Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).  Furthermore, vague and conclusory

3   allegations of official participation in civil rights violations are not sufficient.  See Ivey v. Board

4   of Regents, 673 F.2d 266, 268 (9th Cir. 1982).

5   Motion for TRO/Preliminary Injunction

6           Prior to the dismissal of his original complaint, plaintiff brought a motion for a

7   temporary restraining order/preliminary injunction, wherein he asks the court to order that he be

8   released from Administrative Segregation at the same time that defendants be directed not to

9   transfer him.

10          TRO

11          The purpose in issuing a temporary restraining order is to preserve the status quo

12   pending a fuller hearing.  The cases contain limited discussion of the standards for issuing a

13   temporary restraining order due to the fact that very few such orders can be appealed prior to the

14   hearing on a preliminary injunction.  It is apparent, however, that requests for temporary

15   restraining orders which are not ex parte and without notice are governed by the same general

16   standards that govern the issuance of a preliminary injunction.  See New Motor Vehicle Bd. v.

17   Orrin W. Fox Co., 434 U.S. 1345, 1347 n.2 (1977) (Rehnquist, J.); Los Angeles Unified Sch.

18   Dist. v. United States Dist. Court, 650 F.2d 1004, 1008 (9th Cir. 1981) (Ferguson, J. dissenting);

19   Century Time Ltd. v. Interchron Ltd., 729 F. Supp. 366, 368 (S.D.N.Y. 1990).  In many cases the

20   emphasis of the court is directed to irreparable harm and the balance of hardships because the

21   merits of a controversy are often difficult to ascertain and adjudicate on short notice.

22          Preliminary Injunction Standard

23          The legal principles applicable to a request for preliminary injunctive relief are

24   well established.  "The traditional equitable criteria for granting preliminary injunctive relief are:

25   1) a strong likelihood of success on the merits, 2) the possibility of irreparable injury to plaintiff

26   if the preliminary relief is not granted, 3) a balance of hardships favoring the plaintiff, and 4)

11

advancement of the public interest (in certain cases)." <u>Dollar Rent A Car v. Travelers Indem.</u> <u>Co.</u>, 774 F.2d 1371, 1374 (9th Cir. 1985). The criteria are traditionally treated as alternative tests. "Alternatively, a court may issue a preliminary injunction if the moving party demonstrates 'either a combination of probable success on the merits and the possibility of irreparable injury <u>or</u> that serious questions are raised and the balance of hardships tips sharply in his favor.'" <u>Martin</u> <u>v. International Olympic Comm.</u>, 740 F.2d 670, 675 (9th Cir. 1984) (quoting <u>William Inglis &</u> <u>Sons Baking Co. v. ITT Continental Baking Co.</u>, 526 F.2d 86, 88 (9th Cir. 1975)). The Ninth Circuit has reiterated that under either formulation of the principles, if the probability of success on the merits is low, preliminary injunctive relief should be denied:

> <u>Martin</u> explicitly teaches that "[u]nder this last part of the alternative test, even if the balance of hardships tips decidedly in favor of the moving party, it must be shown as an irreducible minimum that there is a fair chance of success on the merits."

<u>Johnson v. California State Bd. of Accountancy</u>, 72 F.3d 1427, 1430 (9th Cir. 1995) (quoting <u>Martin</u>, 740 F.2d at 675).

In cases brought by prisoners involving conditions of confinement, any preliminary injunction "must be narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct the harm." 18 U.S.C. § 3626(a)(2).

In his subsequently filed amended complaint, filed on December 7, 2006, plaintiff indicates that he has been released from Ad Seg since August of 2006 (AC, p. 11, 39), nor do the claims in plaintiff's motion or in subsequent filings indicate that a transfer is imminent. The motion will be vacated without prejudice with leave granted for plaintiff to file a motion for a preliminary injunction, within thirty days, which demonstrates that the relief he sought in his earlier motion has not been rendered moot.

\\\\\\
\\\\\\

1    In accordance with the above, IT IS HEREBY ORDERED that:

2    1.  Plaintiff's August 8, 2006, motion for a TRO/preliminary injunctive relief is

3    vacated without prejudice to plaintiff's filing a motion for preliminary injunctive relief

4    demonstrating that the conditions of which he complained have not been rendered moot;

5    2.  Plaintiff's claims against Schwarzenegger, Dovey, Tilton, Hubbard, Twyman,

6    Krestch, Arnold, Mitchell, Hislip, Williams, Cullen, Cry, Piazza, Providence, O'Ran, Cates,

7    Moore, Worden, Bautista, Foster, Riley, Morreira and Allen are dismissed, as are plaintiff's

8    ADA claims, for the reasons discussed above, with leave to file one final amended complaint

9    within thirty days from the date of service of this Order.  Failure to file a second amended

10   complaint will result in a recommendation that these defendants be dismissed from this action.

11   DATED: 3/21/07

            /s/ Gregory G. Hollows
12
            _____
13          GREGORY G. HOLLOWS
            UNITED STATES MAGISTRATE JUDGE
14   GGH:009
     wils1232.ord
15

16

17

18

19

20

21

22

23

24

25

26